# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:09CR307 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | |
| ROBERT W. CARLSON, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Robert W. Carlson (Carlson) (Filing No. 16) as amended (Filing No. 24). Carlson is charged in the Indictment with a conspiracy to distribute and possess with intent to distribute methamphetamine (Count I) in violation of 21 U.S.C. § 846, and the possession with intent to distribute methamphetamine (Count II) in violation of 21 U.S.C. § 841(a)(1). Carlson seeks to suppress evidence seized from him and his vehicle on December 7, 2008, during a traffic stop in Gibbon, Nebraska, and during a search of his residence at 824 Avenue B, Kearney, Nebraska, on December 8, 2008.

This is a companion case to **United States v. Wiese**, 8:09CR325 (D. Neb.), wherein Wiese is charged in an Indictment with maintaining a residence used to distribute methamphetamine in violation of 21 U.S.C. § 856(a)(2). An evidentiary hearing was held on November 19, 2009, on Carlson's motion to suppress the evidence obtained at the traffic stop, and the balance of the evidentiary hearing was scheduled for November 30, 2009, such hearing to be consolidated with the hearing on Wiese's motion to suppress since both defendants' motions related to the search of the premises at 824 Avenue B, Kearney, Nebraska, on December 8, 2008.

Carlson was present for the evidentiary hearing on November 19, 2009. He was represented by his counsel, Richard Calkins. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. The court heard the testimony of Trooper Paul Hazard (Trooper Hazard) of the Nebraska State Patrol (NSP) and received into evidence the following exhibits: a DVD of the traffic stop (Exhibit 101), an affidavit for arrest (Exhibit 101), and Trooper Hazard's case narrative (Exhibit 102). A transcript of the November 19,

2009 (TR30.) hearing was filed on November 28, 2009 (Filing No. 30).  The balance of the hearing was continued to November 30, 2009.

A consolidated evidentiary hearing was held on Carlson's and Wiese's motions to suppress on November 30, 2009.  Wiese was present for the hearings along with her counsel, Adam J. Sipple.  Carlson was present with his attorney Richard Calkins.  The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda.  During the consolidated hearing, the court heard the testimony of Trooper Hazard, Officer Jason L. Fuller (Officer Fuller) with the Kearney Police Department (KPD), and Julie Wiese Carlson (Ms. Carlson)[1].  The court also received into evidence a DVD of Carlson's interview (Exhibit 1), a copy of an Advice of Rights Form (Exhibit 2), and ten photographs of the interior of the Carlson residence (Exhibits 101 - 110).  A transcript (TR36.) was prepared and filed on December 9, 2009 (Filing No. 36).

### FINDINGS OF FACT

In the late evening hours of December 7, 2008, Trooper Hazard was monitoring activity at a residence or house in Gibbon, Nebraska, which he suspected of drug trafficking activity (TR30. 13).  As Trooper Hazard was sitting in his patrol vehicle surveiling the Gibbon residence, he observed Carlson leave the residence in a black SUV and drive onto Front Street, where he failed to signal his turn (TR30.14).  Trooper Hazard followed the SUV as it turned off Front Street and again failed to signal its turn (TR30. 15).  Trooper Hazard activated his emergency lights to initiate a traffic stop, and the SUV pulled over immediately (TR30. 16).  Carlson was alone in the vehicle with a canine (TR30.16).  Trooper Hazard walked to the SUV and made contact with the driver, Carlson (TR30. 16).  Trooper Hazard told Carlson he was being stopped for failing to signal his turn (TR30. 16).  After asking for routine information, Trooper Hazard asked Carlson to exit his vehicle in order to come back to Trooper Hazard's patrol vehicle (TR30. 16).

After Carlson got out of the SUV, but before he got into the patrol unit, Trooper Hazard asked Carlson if Carlson had anything in his pockets that would poke, prick, or hurt

---

[1] Defendant Julie Carlson married defendant Robert Carlson after December 2008 and now uses the name of Julie Carlson (TR. 60).

Trooper Hazard in any way (TR30. 17).  Trooper Hazard noted a complete demeanor change in Carlson from a previous demeanor of compliance to a demeanor of backing away and standing up straighter, which change caused Trooper Hazard to suspect there was something on Carlson (TR30. 18).  Trooper Hazard asked Carlson to remove items from Carlson's pockets (TR30. 19).  Carlson asked "why?" (TR30. 19).  Trooper Hazard told Carlson he wanted to be sure Carlson did not have anything that would hurt him (Trooper Hazard) (TR30. 19).  Carlson then removed items from his pants pocket (TR30. 20).  Trooper Hazard asked Carlson to place Carlson's hands on the hood of the patrol car so that Trooper Hazard could pat Carlson down (TR30. 20).  Again, Carlson asked "why?" (TR30. 20).  Trooper Hazard replied he wanted to make sure Carlson did not have anything on him to hurt Trooper Hazard (TR30. 20).  Carlson complied and as Trooper Hazard patted Carlson down, Trooper Hazard felt a plastic bag with contents of a granular material, which Trooper Hazard believed to be a bag of methamphetamine, in Carlson's coat breast pocket (TR30. 21).  Trooper Hazard told Carlson to put his hands behind his back, and Carlson asked "why?" (TR30. 21).  Trooper Hazard said "because you have a large amount of methamphetamine in your coat" (TR30. 22).  Trooper Hazard handcuffed Carlson and removed the bag of methamphetamine from the pocket with some difficulty while Carlson resisted the removal (TR30. 23).  Trooper Hazard placed Carlson in the rear caged area of Trooper Hazard's patrol car (TR30. 24).

     Following Carlson's arrest, Trooper Hazard wanted to obtain a consent to search a residence Carlson shared with Wiese at 824 Avenue B in Kearney, Nebraska (TR36. 8).  Trooper Hazard, in uniform with sidearm, met Officer Fuller, also in uniform with sidearm, and they proceeded in their separate patrol vehicles to 824 Avenue B (TR36. 7).  Upon arrival shortly after midnight, both officers parked in the street and walked to the front door of 824 Avenue B (TR36. 9).  The officers observed a light on in the residence which emanated from a television set (TR36. 9).  Trooper Hazard knocked on the door which was answered by Wiese (TR36. 9).  Trooper Hazard idenified himself and asked if the officers could speak with her (TR36. 9).  Wiese agreed to talk with the officers and allowed the officers to enter the residence after they asked if they could step inside because of the cold weather outside (TR36. 9).  When the officers stepped into the residence, Trooper Hazard

told Wiese that Carlson had been arrested for possession of a large amount of methamphetamine (TR36. 9-10). Wiese stated she thought he (Carlson) was done using methamphetamine (TR36. 10). Trooper Hazard told Wiese that he had information that there was possible criminal activity going on at the residence (TR36. 10). Trooper Hazard asked Wiese if Carlson lived at the residence and for how long (TR36. 10). Wiese told Trooper Hazard that Carlson had been living there for about nine years (TR36. 10). When asked whose house it was, Wiese stated she owned the house and had full control of the house (TR36. 10-11). Trooper Hazard asked if there were any narcotics in the house to include drug paraphernalia, methamphetamine, marijuana, or anything of that nature (TR36. 11). Wiese stated that if there were such items, they would be in the "man cave" (TR36. 11). When asked where the "man cave" was, Wiese said it was in the basement (TR36. 11). When asked when she goes to the basement, Wiese stated she goes downstairs for the computer, to get things out of the deep freezer, to get cat food, to use the washer and dryer, and to visit with Carlson when he is there (TR36. 12). Wiese claimed full access to the basement area (TR36. 12).

  When asked by Trooper Hazard whether he could have permission to look around the residence, Wiese stated "yes" (TR36. 12; 50). Wiese was asked if the officers could search the residence and Wiese said "yes, absolutely." (TR36. 12). The officers looked around the main level of the house and then asked to go into the basement (TR36. 14). Wiese took the officers around a corner to the basement stairs and led the officers down the basement (TR36. 14). The main area had a couch, several chairs, a computer desk, some stereo equipment, and a small desk (TR36. 14-15). In an alcove area, a sheet hung down covering up a washer/dryer, a freezer, and bags of cat food (TR36. 15). As the officers came into the basement, they observed drug paraphernalia on the desk consisting of a methamphetamine pipe and several zip-lock bags with a powdery residue in them (TR36. 16). The officers also noted an odor of burnt marijuana (TR36. 16). When asked if there were any other narcotics she was aware of, Wiese opened some of the desk drawers and pointed out such materials (TR36. 17; 52). The officers saw a metal container in the overhead open rafters and asked Wiese if they could remove it from the ceiling and search it (TR36. 16). Wiese said "yes," and Trooper Hazard removed the tin container

and Wiese opened the tin for the officers (TR36. 18-19; 52). Inside the tin container were methamphetamine paraphernalia, suspected drug ledger records, and some traces of methamphetamine in plastic bags (TR36. 19). After spending approximately thirty minutes in the residence, the officers left with the contraband they had found (TR36. 20).

## LEGAL ANALYSIS

### A. Traffic Stop and Frisk

Carlson seeks to suppress the evidence seized from the frisk of his person at the scene of the traffic stop on the evening of December 7, 2008.

A law enforcement officer's observation of a traffic violation provides probable cause to stop a vehicle. *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (**citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). An officer's subjective motivations do not affect the reasonableness of a traffic stop based on the violation of the traffic laws. *Long*, 532 F.3d at 795; *United States v. Chatman*, 119 F.3d 1335, 1340 (8th Cir. 1997) ("[T]he stop is valid even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot.") (internal quotation omitted). Contemporaneous with a valid traffic stop, "the officer [is] entitled to conduct an investigation reasonably related in scope to the circumstances that initially prompted the stop." *Untied States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (**quoting** *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (per curiam)). In fact, a police officer may detain the occupants while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008); **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

During such a traffic stop, a law enforcement officer may conduct a pat-down of an occupant of the vehicle if he has reason to believe the person may be armed or dangerous in order to protect himself from harm. *United States v. Banks*, 553 F.3d 1101 (8th Cir. 2009); **see also** *United States v. Menard*, 95 F.3d 9, 10-11 (8th Cir. 1996). In this case Trooper Hazard testified Carlson's demeanor changed when he was asked if he had anything which would hurt the officer. Under *Terry v. Ohio*, 329 U.S. 1 (1968), Trooper

Hazard was entitled to frisk Carlson at the scene of the traffic stop. Finding the methamphetamine in Carlson's pocket gave Trooper Hazard authorization to seize the items and arrest Carlson. The frisk and seizure on December 7, 2008, was compatible with the Fourth Amendment and the exceptions thereto. Carlson's motion is without merit and should be denied.

## B. Search of the Residence

Carlson contends the search of the residence in the early morning hours of December 8, 2008, was unlawful. The government counters that Wiese (Ms. Carlson) consented to any search of the residence

A consent search must be voluntary. The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). Some personal characteristics that aid in determining voluntariness of consent are age, intelligence, whether an individual was under the influence of drugs or alcohol, whether an individual was read his *Miranda* rights, and whether an individual had experienced prior arrests. **See** *United States v. Comstock*, 531 F.3d 667, 676-77 (8th Cir. 2008) (listing factors). A court may also look at environmental factors including, the period of time that the individual was detained; whether the police threatened, physically intimidated, or punished the individual; whether promises or misrepresentations were made upon which the individual relied; whether the individual was in custody or under arrest at the time of consent; whether the consent occurred in a public or secluded place; and whether the individual objected or stood by silently while the search occurred. *Id.* (**citing** *United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007)).

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (footnotes omitted). "In order for a consensual search to be valid, consent must actually be given (either express or implied), and the person giving consent must have (actual or apparent)

authority to do so." *United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008). The government bears the burden of proving voluntary consent to search by a preponderance of the evidence. *United States v. Esquivel*, 507 F.3d 1154, 1159-60 (8th Cir. 2007).

In the present case, I find no evidence suggesting Wiese was threatened, intimidated, or promised anything in return for giving consent to search the residence. Not only did Wiese consent to the search, she assisted Trooper Hazard and Officer Fuller in the search of the residence, desks, and containers.

In addition to voluntariness, consent must be obtained from "the defendant or 'from a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *United States v. Adams*, 346 F.3d 1165, 1170-71 (8th Cir. 2003) (**quoting** *United States v. Matlock*, 415 U.S. 164, 171 (1974)). "The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the [property]." *Id.*; **compare** *United States v. Kuenstler*, 325 F.3d 1015, 1020 (8th Cir. 2003) (overnight guest had expectation of privacy in the home in which he was staying and thus the right to invoke the Fourth Amendment). Further, consent may be reasonably implied from behavior, rather than solely from verbal affirmance. *United States v. Williams*, 346 F.3d 796, 799 (8th Cir. 2003) (consent to entry found where individual opened door wide and stepped aside); **see also** *United States v. Mendoza-Cepeda*, 250 F.3d 626, 627-29 (8th Cir. 2001) (finding law enforcement reasonably viewed the defendant's gestures as consent to a search); *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001) (consent to search person found where defendant opened and raised his arms with palms up); **but see** *United States v. Guerrero*, 374 F.3d 584, 588-89 (8th Cir. 2004) (upholding a district court finding of involuntary consent when the defendants "were unable to communicate effectively and [the officer] was aware of the **communication barrier**"). No search warrant was necessary as Wiese, who was in control of the premises, voluntarily consented to the search in question.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Carlson's motion to suppress (Filing No. 16) as amended (Filing No. 24) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendations shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendations.  Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of January 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge